## Wilkins *against* Boyce.

A was a partner of B in a house at Natchez. B and C composed another firm at the same place. A undertook, as the agent of the firm of B and C, the collection of a bill of exchange belonging to D, and enclosed it for that purpose to a house in Philadelphia, instructing the house to transmit the proceeds of the bill when collected to B, who resided at Pittsburgh, and signing himself to the letter of advice "for B and C." The house in Philadelphia brought suit on the bill in the name of B and C as indorsers, recovered the proceeds, and transmitted the same to B agreeably to A's instructions. The firm of which A was a partner, or rather A himself, was, at the time B received the proceeds, largely indebted to B. The owner, D, brought *assumpsit* against B for the proceeds of the bill. *Held,* that A acted as the agent of the firm of B and C, and not in the course of any mercantile transaction with the firm of which he (A) was a partner; that the transaction was nothing else than the collection of money by the firm of B and C, and a receipt of it by one of the partners (B), which receipt affected that partner as well as the firm with a knowledge of the whole transaction, and rendered said firm liable to the legal owner for the proceeds of the bill.

That one was sued for the liability of a firm can only be taken advantage of by plea in abatement.

If the finding of a jury be not justified by the evidence, the remedy is a motion for a new trial, not a writ of error.

WRIT of error to the court of common pleas of *Alleghany* county.

This was an action of *assumpsit* brought by Richard Boyce for the use of Benjamin Temple against John Wilkins, Jun. On the death of the defendant below, his administrators were substituted. The facts of the case were briefly these. John Wilkins, Jun. was a partner in two firms in the city of Natchez, one John and Charles Wilkins, the other Daniel D. Elliott and Co. In December 1806, Daniel D. Elliott, as the agent of John and Charles Wilkins, forwarded to the Messrs Gratz & Co. of Philadelphia, a draft drawn by William Cranston, in favour of James Boyce, on John Jordan, Jun. of Lexington, Kentucky, for 450 dollars, under protest for non payment, and requested the Messrs Gratz to collect the same from the drawer, Cranston, and, on the receipt of the money, to pass it to the credit of John Wilkins, Jun. of Pittsburgh. The letter of advice inclosing the draft, is signed "for John and Charles Wilkins, D. D. Elliott." The Messrs Gratz brought suit on the bill in the common pleas of Philadelphia county, against William Cranston, in the name of John and Charles Wilkins, as indorsees, and in July 1808, they received 506 dollars and 83 cents, the amount of debt and costs, which they passed to the credit of John Wilkins, Jun. as per order of D. D. Elliott, the only person known in the transaction to the Messrs Gratz; and John Wilkins, Jun. received a valuable consideration for the amount of the same in his account current with

the Messrs Gratz. It also was in evidence, by an award of auditors made on the 13th of April 1814, under a decree of the superior court of law and chancery in the territory of Mississippi, that D. D. Elliott was indebted to John Wilkins, Jun. on that day in the sum of 6886 dollars and 30 cents.

On the trial, the plaintiff below gave in evidence the following deposition of Daniel D. Elliott, the contents of which were somewhat effaced.

" I was a partner [of John Wilkins, Jun. of Pittsburgh, in July 1808]. I once saw a letter from Gratz & Co. of Philadelphia, in which they state that they had collected money from captain Cranston to the amount of, I think, upwards of five hundred dollars, and which they had placed to the credit of John Wilkins, Jun. by my instructions. In the year one thousand ———ht hundred and f———, —mes Boyce became —timate in the house of Joh— ——— ———les Wilkins at Natchez, or John Wilkins ——— ——— Co. In the year one thousand eight hundred and four, five, or six, the time not particularly recollected, James or Richard Boyce, I think James, showed me a bill drawn by Cranston on John Jordan, Jun. of Lexington, Kentucky, in favour of said Boyce, for four hundred dollars, but not certain of the amount; and some time after, James or Richard Boyce, I think Richard, transmitted said bill from Kentucky to the house aforesaid, or to me as the agent of said house, for collection off said Cranston, it being protested by John Jordan, Jun. the drawee. I sent the protested bill to New Orleans to Kenner and Henderson, understanding that captain Cranston was there, with instructions to recover the amount from Cranston. Kenner and Henderson returned the bill to me with advice that captain Cranston had sailed to Philadelphia. I then, as the agent for the house aforesaid, transmitted said bill to the Messrs Gratz of Philadelphia for collection, and instructed them to place the proceeds of the said bill, when collected, to the credit of John Wilkins, Jun. In reply, Messrs Gratz informed me that captain Cranston had sailed for some port in Europe before the receipt of the bill. I heard nothing from the Messrs Gratz on the subject of this bill for a long time afterwards. The first information I then had on the subject was a letter from the ——— of Messrs Gratz to a Mr Temple of ———, Kentucky, shown me by ——— Postlethwaite of this place, advising that f——— ———red dollars and upwards, I th—, had been received of ——— by the said Gratz, and —assed to the cred——— John Wilkins ———. I then w——— to general Wilkins ——— proceeds of the ——— belonged to James ——— Richard Boyce, or his in———ee and that his house ——— had no interest in it. I believe the bill was ——— in favour of James Boyce ——— and that at the time ——— it to me, it was his property, and that he afterwards transferred it to Richard Boyce. I never was informed by the house of Gratz that the bill was collected. If I had been so informed, I should have drawn for the amount in favour of Boyce on John Wilkins."

In addition to the award of auditors, already referred to, which was given in evidence on the part of the defendant below, it was proved, by the deposition of James C. Wilkins, that the firm of D. D. Elliott & Co. had always been able to discharge their engagements, and that in July 1808, when the proceeds of the draft were paid to John Wilkins, Jun., D. D. Elliott was, and still continued to be, largely in his debt.

The following points were submitted by the defendant's counsel to the court below :

1. The suit is incorrectly brought in the name of Richard Boyce, there being no legal evidence that he had at any time any interest in the bill of exchange.

2. The suit ought to have been instituted against John and Charles Wilkins, the indorsees.

3. There can be no recovery by the plaintiff, because there has been no evidence of any previous notice to John Wilkins, Jun. that the proceeds of the bill received in the suit in Philadelphia belonged to the plaintiff, or to any one but himself, then largely the creditor of D. D. Elliott, by whose instructions the amount recovered was passed to his credit.

4. The plaintiff cannot recover, because the recovery of John and Charles Wilkins before a competent tribunal is conclusive (as to the same subject matter) upon all parties and privies to the bill of exchange upon which that suit was founded.

5. The clear import of Elliott's letter to the Gratz is, that the proceeds of the draft on Jordan were destined to the use of John Wilkins, Jun., and would, when collected, belong to him.

6. The fact of John Wilkins, Jun. being a partner in the firm of D. D. Elliott & Co., or of John and Charles Wilkins, does not, in this case, raise any legal implication of notice to him of the facts stated in Elliott's deposition, relative to the interest of Richard Boyce in the proceeds of the draft, such implication being negatived by the letter of Elliott to the Gratz.

7. Assuming that all the facts in Elliott's deposition are true, they do not legally prove that Richard Boyce was the owner of the bill of exchange. They prove more strongly that James was the owner. Under the circumstances of this case, and in the absence of the bill of exchange, no presumption is to be made in favour of the plaintiff's right.

Assignment of errors.

1. The court erred in charging the jury, that notice to Elliott was notice to John Wilkins, Jun. and that John Wilkins, Jun. was therefore liable.

2. The court erred in saying to the jury, " that notice to the firm was notice to John Wilkins, Jun., and that, independent of this, there was strong reason to believe that John Wilkins, Jun. had early notice of the true state of the case."

III.—F

[Wilkins v. Boyce.]

3. The court erred in stating to the jury, that the indebtedness of Daniel D. Elliott to John Wilkins, Jun. could not affect the case.

4. The court erred in not instructing the jury that the plaintiff below could not recover, because Richard Boyce having become the owner of the claim after it was transmitted to Elliott for collection, the suit should have been brought in the name of James Boyce.

5. The court erred in not saying to the jury that, under the circumstances of the case, and in the absence of the bill of exchange, the presumption was, that James, and not Richard, was the true holder, and that the name of the former should have been used in the institution of the suit.

6. The court erred in their answer to the second point made by defendant's counsel.

7. The court erred in their answer to the fourth point made by defendant's counsel.

*Dallas,* with whom was *Forward,* for the plaintiff in error.

Before proceeding to examine the legal points involved in this case, we will dwell for a moment on the morality of the defence, which we wish to place beyond all doubt. Elliott was a partner at Natchez, and there superintended the business of the firm, composed of himself and John Wilkins, Jun. The latter was the capitalist. When the proceeds of this draft were transmitted by the Messrs Gratz, Elliott was greatly indebted to the firm of Elliott & Co., or rather to John Wilkins, Jun. his partner. While Elliott and Wilkins remained on good terms the proceeds of the draft were in part payment of that debt, and so always considered by all parties, until the oath of Elliott, which was the first notice John Wilkins, Jun. received, was sprung upon us after a settlement at Natchez, to which Elliott was forced, and which made him Wilkins's debtor to a large amount. There it was that, for the first time, Elliott gave the proceeds this new direction. He never before informed John Wilkins, Jun. that the proceeds belonged to another. And why did he direct the amount to be passed to the credit of John Wilkins, Jun. if it really belonged to Boyce? Why did he not send a check for it to James, or Robert Boyce? This suit was instituted in 1810. It was arbitrated in 1814, and decided in favour of Wilkins. It then slumbered till 1821, a lapse of seven years. In 1828 there was another award of arbitrators in favour of Wilkins.

Then as to the first error assigned, we say the court below assumed what was not proved ; that Elliott was the agent of John and Charles Wilkins. This no where appears, except possibly from his own statement. In his letter to the Messrs Gratz he signs himself "for John and Charles Wilkins." The language in the charge of the court below is, " I understand him to be the agent, &c." Now what was the testimony of Elliott himself on this point?. In answer to the direct question whether he was the agent or partner, he says " I was a partner." But if he even had said that he was the agent,

[Wilkins v. Boyce.]

his own declaration was no evidence of the agency. Professions of agency give no validity to his acts as agent. There must be evidence *aliunde.* M. Bank of Alexandria *v.* Bank of Columbia, 5 *Wheat.* 326. The court below put it on the ground of a partnership transaction. How could it be so viewed? It had nothing to do with the mercantile business of the firm. Then suppose for a moment that he was the general agent of the firm; his agency would be confined to mercantile partnership transactions : and this was not one of that kind. There should therefore have been actual notice to John Wilkins, Jun. at the time of the transmission of the proceeds, as to the true state of the case. But John Wilkins, Jun. having honestly received the amount without such notice, the money cannot be followed into his hands. Miller *v.* Race, 1 *Burr.* 452 ; Clarke *v.* Shee and Johnston, 1 *Cowp.* 200 ; Rogers et al. *v.* Huntingdon Bank, 12 *Serg. & Rawle* 77 ; Smull's Administrator *v.* The Northampton Bank, 1 *Rawle* 59.

There is no evidence to authorise the declaration of the court below, which is quoted in the second error ; that John Wilkins had early notice of the true state of the case.

In support of the third error, we contend that the fact, which we proved, that D. D. Elliott was indebted to John Wilkins, Jun. does affect the case, as it went to show that the transmission of the proceeds of the draft to John Wilkins, Jun. was in part liquidation of the debt.

The suit should have been instituted in the name of James Boyce. The court below erred in leaving it to the jury to conjecture that Richard Boyce was the original owner of the draft, when it was in proof from the testimony of Elliott himself that such was not the fact. The doubt expressed in the charge on this point was erroneous, when the fact was clear that the draft was drawn in favour of James Boyce. Here then an individual recovers who has no right to recover. A recovery would not bar an action by James Boyce, if it is not proved that Richard Boyce was the owner and had the right. This is a vital point, and one which should decide this case. Reigert et al. *v.* Ellmaker, 6 *Serg. & Rawle* 45 ; Winchester *v.* Hackley, 2 *Cranch* 342 ; Forth et al. *v.* Stanton, 1 *Saund.* 210 ; Master *v.* Miller, 4 *Term Rep.* 340. Where is the evidence that Richard Boyce was the owner? Where is the evidence that would prevent James Boyce from recovering? The mere suggestion, hypothesis, supposition of the court below! What right had the court to suppose? What could have been the basis of their imagination, when the fact was undoubted? What right, too, had the jury to adopt the supposition of the court, and join with them in conjecturing against evidence? The form of action was also erroneous in relation to the defendants. It was instituted against John Wilkins, Jun. alone. The letter from Elliott himself to the Messrs Gratz puts it on the ground of a partnership concern of John and Charles Wilkins. The plaintiff below had therefore no election, and no right to select John and release Charles. We were told that we

[Wilkins v. Boyce.]

ought to have pleaded in abatement. This was unnecessary. The object of that plea is to give the plaintiff notice of other parties. *Bull. N. P.* 152. This notice was contained, in fact, in Elliott's letter. John Wilkins, Jun. however, was charged individually. He put in the general issue. They could not then say he must be treated as a partner. This was money received by him from the firm. The individual and the firm are distinct. Upon notice only could the money be fixed upon him as a receiver. How could they pass over the firm and proceed against him without actual notice ?

*Fetterman,* for the defendant in error, the court declined hearing.

The opinion of the Court was delivered by

Rogers, J.—Under the facts the court were correct in charging the jury, that Elliott was the agent of John and Charles Wilkins; that he received the bill not in the course of any mercantile transaction with the firm of which he was a member, but as the agent of the firm of John and Charles Wilkins, who undertook the collection of the bill. The letter of Elliott, transmitting the bill, is signed by him as the agent of the firm. In addition we have the oath of Elliott, in which he states that he was the agent of John and Charles Wilkins, and as such transmitted the bill to the Messrs Gratz for collection, together with the fact that it was collected by suit in their name. As the facts are presented on the record, what is this but the collection of money by the firm and a receipt of it by one of the partners ? The credit which the Messrs Gratz gave in their account current with John Wilkins, Jun., is equivalent to a payment in cash. If John Wilkins had received the proceeds, he of course would have been affected with a knowledge of the whole transaction. Are we to suppose that he would not have inquired into the source from which the money came ? If he had, the letter of Elliott, transmitting the draft, could have left no doubt on his mind that it was not intended as a payment or remittance by the house of which Elliott was a partner, but that it was a transaction in which the firm of John and Charles Wilkins were concerned, as the instrument of collection through their agent Elliott. I cannot then see the error in the court in charging the jury that John Wilkins must be supposed to be cognisant of the true nature of the case. If he had inquired, as it was his duty, he could not have been under any mistake as to the nature of the payment.

But in what capacity was the money received except by Wilkins as a member of the firm ? We can see no difference whether the draft was transmitted by the agent or by one of the partners. It is still the act of the firm. If it had been transmitted by Charles Wilkins for the firm, with a similar direction as to payment, can it be doubted that the firm would have been liable to the holder of the bill ; that an action of *assumpsit* would lie, by the legal owner, to re-

[Wilkins v. Boyce.]

cover the amount received by one of the firm? It would be a partnership transaction, which would of course subject the firm to this action. But here we are met with the difficulty, that the suit is brought, not against the firm of John and Charles Wilkins, but against John Wilkins. If the defendant had put in a plea in abatement, there would have been some difficulty in answering the objection. But there is no principle of law better settled, than that an objection, such as this, must be taken advantage of by plea in abatement.

One other error remains to be considered. The court were requested to charge the jury, that the suit is incorrectly brought in the name of Richard Boyce, there being no legal evidence that he had at any time any interest in the bill of exchange referred to in the depositions of H. and S. Gratz and D. D. Elliott.

To this the court answer, " I conceive the matter by no means clear. If Richard Boyce became the owner of this claim, after it was transmitted to Elliott for collection, I am under the impression that the suit should have been brought in the name of James Boyce." If, says the court, Richard Boyce's interest was acquired after the bill was sent to John and Charles Wilkins for collection, the suit should have been brought in the name of James. The answer of the court amounts to a positive direction in favour of the defendant, of which he certainly has no right to complain. It would strike me that if Richard acquired his interest at any time before the collection of the bill, it would be money received to his use, which he might recover in his own name. The court refers the fact to the jury, of which the defendant contends there was no legal evidence. But this, I apprehend, is a mistake of the evidence of Elliott. He says, " James or Richard Boyce, I think James, showed me a bill drawn by Cranston on John Jordan, Jun. of Lexington, Kentucky, in favour of Boyce for 400 dollars, but not certain of the amount, and some time after, James or Richard Boyce, I think Richard, transmitted said bill from Kentucky to the house aforesaid [John and Charles Wilkins], or to me as the agent of said house, for collection." It is true, in another part of his deposition, he says, " I believe the bill was ―― in favour of James Boyce ――― and that at the time ―― it to me, it was his property, and that he afterwards transferred it to Richard Boyce." There was then some evidence of the fact that Richard was the owner of the bill. If the jury found against evidence, the remedy was a motion for a new trial, and not a writ of error.

Judgment affirmed.